PATRICK WALLACE, administrator, vs. IRVING F. LUDWIG.

SAME vs. SAME.

PATRICK WALLACE vs. SAME.

Suffolk.    January 17, 1935. — October 30, 1935.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Proximate Cause. Evidence*, Competency; Opinion: expert. *Practice, Civil*, Special questions to jury.

That an injury caused hemorrhages which so lowered the vitality of the
    injured person that he could not resist a germ infection was a proper
    subject for opinion testimony by the attending physician.
Discussion by RUGG, C.J., of proximate causation.
An injury which caused hemorrhages leaving the injured person so weak-
    ened as to be unable to resist a particular disease that one in ordinary
    health might have resisted, could be found to be the proximate cause
    of his death, though the immediate cause was germs of that disease
    entering his body while in the weakened condition.
The jury in answering a categorical question submitted to them may add
    a qualification warranted by the evidence.

THREE · ACTIONS OF TORT, the first originally by Phenel-
ope Wallace and after her death prosecuted by the admin-
istrator of her estate.    Writs dated respectively July 15,
1930, February 9, 1932, and January 28, 1931.

The actions were tried together in the Superior Court
before *F. T. Hammond*, J.    There were verdicts for the
plaintiffs in the sums, respectively, of $1,500, $2,835, and
$138.    The defendant alleged exceptions.

*T. H. Mahony*, for the defendant, submitted a brief.

*B. J. Killion*, (*E. Donovan* with him,) for the plaintiffs.

RUGG, C.J.    These are actions of tort.    The first is
brought to recover compensation for personal injuries sus-
tained by the plaintiff's intestate, Phenelope Wallace, here-
after called the intestate, the second for her death, and the
third for consequential damages caused to her husband.
All arise out of the same incident and are founded on al-
leged negligence of the defendant in so operating his auto-

mobile as to strike the intestate while she was crossing a public way on foot. A general verdict was returned for the plaintiff in each case.

It is not necessary to recite the evidence. It warranted findings that the intestate received severe personal injuries by reason of the negligence of the defendant, that there was no contributory negligence on the part of the intestate, and that she subsequently died. *Pease* v. *Lenssen,* 286 Mass. 207.

The questions argued by the defendant relate chiefly to the death case. The accident happened on May 31, 1930. The intestate died on February 19, 1931. There was evidence tending to show that by reason of the accident the intestate suffered a miscarriage, had an enlarged uterus, and covering a period of several months at intervals had prolonged hemorrhages notwithstanding the fact that in August she went to a hospital and was curetted; that she became and continued anaemic from loss of blood and lost vitality and strength; that she went to the hospital again on February 12, where she died a week later from hemolytic streptococcus, a germ infection which developed first on February 17; that that germ is very virulent, enters the system through the respiratory tract and acts quickly if powers of resistance are broken down; and that the intestate did not have the germ when she went to the hospital on February 12. There was medical testimony to the effect that there was a causal connection between the accident and the death, because the accident caused the hemorrhages which left the vitality of the intestate so lowered that she could not resist the infection of the streptococcus germ. The trial judge in his charge to the jury stated the conflicting contentions of the parties. He then gave these instructions, to which the defendant excepted: "There can be no recovery except for consequences which resulted from this accident as a cause. If you find that by reason of the accident hemorrhage was caused in Mrs. Wallace and by reason of such hemorrhages she became weak and enfeebled and her vitality was impaired and her capacity to resist disease was impaired . . . and if owing to that lowered vitality

and weakness a germ disease like this hemolytic streptococcus developed in her which caused her death then you would be justified in finding a causal connection between the accident and the death. . . . As I told you in . . . the death case, the question is whether the death was caused by the accident; if you find that the immediate cause of the death was an infection due to this streptococcus and if you further find that by reason of the accident the deceased . . . was enfeebled by . . . hemorrhage or other conditions . . . due to the accident and that because of hemorrhage or other conditions due to the accident her vitality was lowered and her power to resist disease was diminished and you further find that but for that diminution of power to resist disease and impairment of vitality she would probably have resisted the disease caused by this germ and it would not have had a fatal effect then you would be warranted in finding that the death was caused by the accident, even if the immediate cause of the death was this infection due to the germ; if, however, you should find that the immediate cause of the death was this infection and that there was no weakness and enfeeblement due to the accident itself which impaired the power to resist this disease and that the disease developed independently of any lack of vitality or enfeeblement due to the accident then you would be warranted in finding that the death was caused by causes independent of the accident and that it was not under those circumstances caused by the accident."

There was no error in the admission of testimony of the attending physician. The injuries arising from the accident were fully described. He then stated that the accident caused the hemorrhages in the intestate and that these left her vitality so lowered that she could not resist the infection of germs. This was a proper subject for expert testimony. *Binns* v. *Blake,* 289 Mass. 70. *Larson* v. *Boston Elevated Railway,* 212 Mass. 262, 265, 267. Cases like *Little* v. *Massachusetts Northeastern Street Railway,* 223 Mass. 501, 504, and *Reed* v. *Edison Electric Illuminating Co.* 225 Mass. 163, 167, are quite distinguishable.

The exception to the charge in the light of the medical

testimony raises the question whether the injury which by reason of the negligence of the defendant came to the intestate could under the law have been found to be the proximate cause of her death.   The proximate cause is that which in a continuous sequence, unbroken by any new cause, produces an event and without which the event would not have occurred.   It may be assisted or accelerated by other incidental and ancillary matters, but, if it continues as an operative and potent factor, the chain of causation is not broken.   It was said by Knowlton, J., speaking for the court in *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.* 158 Mass. 570, 575: "The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the direct and proximate cause."   In *McDonald* v. *Snelling,* 14 Allen, 290, 296, it was said: "the mere circumstance that there have intervened, between the wrongful cause and the injurious consequence, acts produced by the volition of animals or of human beings, does not necessarily make the result so remote that no action can be maintained. The test is to be found, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence."   *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351, 353.   It was said in *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352, 361–362, that it "must now be taken to be settled (at least in this Commonwealth) that the natural and probable consequences of the defendant's act are to be looked to in determining their character . . . . But in cases of negligence . . . when it is determined that the defendant's act was a negligent one, the question of causation, that is, the question whether the injury suffered by the plaintiff was in fact caused by the defendant's negligent act, is one not affected by what the natural and probable consequences of that act were.   What was said . . . in *Sponatski's Case,*" 220 Mass. 526, at pages 530, 531, "is of general application.   The question of causation is one and the same question no mat-

ter how the defendant's liability is made out. It is of no consequence whether the fact by reason of which the defendant is liable, is made out under the workmen's compensation act, under the act which makes a railroad liable if certain signals are not given (as in *Daniels* v. *New York, New Haven & Hartford Railroad,* 183 Mass. 393), or under the rule governing common law actions of negligence." Numerous cases are cited and discussed in that opinion, showing that the intervening act of a third person may not break the causal connection between the original negligence of the defendant and the ultimate injury to the plaintiff. *Mitchell* v. *Lonergan,* 285 Mass. 266, 271. *Morrison* v. *Medaglia,* 287 Mass. 46.

The result of these decisions is that the primary cause may be the proximate cause, provided it continues to be efficiently, actively, and potently operative, although successive subsidiary instrumentalities may coöperate to produce the final result. *Mogé* v. *Société de Bienfaisance St. Jean Baptiste,* 167 Mass. 298. *Gordon* v. *Bedard,* 265 Mass. 408, 412. *Jiannetti* v. *National Fire Ins. Co.* 277 Mass. 434. This is the general principle applicable to diseases as well as to other results of negligent conduct.

Many cases have arisen illustrating the converse of this proposition, where it has been held that the causal connection between the original wrong of a defendant resulting in injury to a plaintiff and the ultimate harm to such plaintiff has been broken and that something so distinct from the original injury has thereafter happened as to constitute an intervening efficient, independent and dominant cause. *Raymond* v. *Haverhill,* 168 Mass. 382. *Snow* v. *New York, New Haven & Hartford Railroad,* 185 Mass. 321. *Daniels* v. *New York, New Haven & Hartford Railroad,* 183 Mass. 393. *Jacobs* v. *New York, New Haven & Hartford Railroad,* 212 Mass. 96. *Horan* v. *Watertown,* 217 Mass. 185. *Panagotopulos's Case,* 276 Mass. 600, 608. *Tetrault's Case,* 278 Mass. 447, 448. *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161, 169. *Dewing* v. *New York Central Railroad,* 281 Mass. 351, 354. *Scheffer* v. *Railroad Co.* 105 U. S. 249. *Salsedo* v. *Palmer,* 278 Fed. Rep. (C. C. A.) 92, 98, 100–101.

*Perry* v. *Rochester Lime Co.* 219 N. Y. 60. These cases need not be reviewed. The principle is clear and well recognized. Nothing here decided impairs the force of that principle.

It is settled that, where an injury arising from a cause which entails liability on the defendant combines with a preëxisting or a subsequently acquired disease to bring about greater harm to the plaintiff than would have re-. sulted from the injury alone, the defendant may be liable for all the consequences. If the injury causes or contributes to cause the development of a preëxisting disease, the person liable for the injury is liable also for the resulting aggravation. The wrongdoer may be held responsible for the harmful results of the combined effects of his wrongful act and the disease. *Larson* v. *Boston Elevated Railway*, 212 Mass. 262, 267. *Wiemert* v. *Boston Elevated Railway*, 216 Mass. 598. *Burns's Case*, 218 Mass. 8, 11. *Minns's Case*, 286 Mass. 459, 464. *Walker* v. *Nickerson*, 291 Mass. 522, 525–526. *Bryant* v. *Emerson*, 291 Mass. 227, 229. *Dellapenna* v. *Irwin*, 291 Mass. 221. *Haufler* v. *Public Service Railway*, 50 Vroom, 404, 405. *McCahill* v. *New York Transportation Co.* 201 N. Y. 221, 223. *St. Louis, Iron Mountain & Southern Railway* v. *Steel*, 129 Ark. 520, 527. If the injury directly causes disease, even though it was not theretofore present in the system of the person injured, liability of the wrongdoer extends to all injurious results of such disease. *Charles* v. *Boston Elevated Railway*, 230 Mass. 536, 540–541. *Walker* v. *Gage*, 223 Mass. 179. *Binns* v. *Blake*, 289 Mass. 70. *Armstrong* v. *Montgomery Street Railway*, 123 Ala. 233, 249–250. *Ohio & Mississippi Railroad* v. *Hecht*, 115 Ind. 443, 444, 448. In *Hartnett* v. *Tripp*, 231 Mass. 382, it was held that where negligence of the defendant had caused the breaking of the leg of the plaintiff and as he was convalescing further injury was received by the slipping of his crutch, the defendant was liable for additional injury thus caused. To the same effect is *Clayton* v. *Holyoke Street Railway*, 236 Mass. 359, 362. This principle was followed in *Wilder* v. *General Motorcycle Sales Co.* 232 Mass. 305, where the person wrongfully injured by the defendant

suffered a later and additional injury because of a fall resulting from weakness caused by the original injury. *Gaglione's Case*, 241 Mass. 42. In *Charles* v. *Boston Elevated Railway*, 230 Mass. 536, 540–541, the injury of the plaintiff was caused by being thrown from a vehicle through the wrongful act of the defendant. The jury were instructed that, if by reason of her fall the plaintiff "was confined to her bed and had become weak and enfeebled, and if owing to that weakness and confinement hyperstatic pneumonia developed which caused her death, then you would also be warranted in finding that her death was due to the accident." It was held that this instruction was not erroneous.

The result follows that, if any injury progressively so reduces the general vitality of the person injured as to make him peculiarly susceptible to a disease which is contracted, the chain of causation is not thereby broken as matter of law. *Terre Haute & Indianapolis Railroad* v. *Buck*, 96 Ind. 346, 349, 356. *Beauchamp* v. *Saginaw Mining Co.* 50 Mich. 163, 172–174. *Baltimore City Passenger Railway* v. *Kemp*, 61 Md. 619. *Williams* v. *Vanderbilt*, 28 N. Y. 217, 222. In vol. 2, Am. Law Inst. Restatement: Torts, § 458, occurs this statement: "If the negligent actor is liable for another's injury which so lowers the other's vitality as to render him peculiarly susceptible to the disease, the actor is also liable for a disease which is contracted because of the lowered vitality." This rule applies even (Comment a.) where the lowered vitality is shown to have resulted in the other acquiring a disease from which he had never previously suffered. (Comment c.) "Where the disease of another, whose vitality has been lowered by the actor's negligent conduct, is one which attacks equally the healthy and infirm, the lowered physical condition is so insignificant a factor that a court or jury may regard it as not being a substantial cause of the disease." It was said in *Larson* v. *Boston Elevated Railway*, 212 Mass. 262, 267, with respect to the development of tuberculosis in the plaintiff subsequently to her injury: "If the plaintiff's tuberculosis had been directly caused by this accident, it would of course have been an element of damages. So, if it were induced

without any other intervening cause by her weakened condition or her loss of blood, itself directly caused by the accident, the same would be true." This was the point before the court, and was the ground upon which the decision rested. The court there was considering the situation where germs enter the system after the injury. That is plain because the sentence following deals with the situation where the germs were in the system at the time of the injury. The force of this statement was not cut down or narrowed by that which was said on page 268, by way of illustration, touching a claim not then before the court: "If, however, her tuberculosis came from germs introduced into her system after she had sustained these injuries, or by the operation of some other subsequent and independent cause, then, even though the disease would not have developed" but for her physical condition having been weakened by those injuries, "it may well be that she could recover no damages for that sickness and its consequences." As thus interpreted, the proposition under discussion in that case places upon the wrongdoer liability for the original injury and for the results of a disease the germs of which thereafter entered the body of the injured person because of a peculiar susceptibility directly caused by the original injury, which continued to operate. In any event, the last sentence quoted is not controlling in the facts here disclosed. *Ensign* v. *Southern Pacific Co.* 193 Cal. 311, 318. *Sallie* v. *New York City Railway,* 110 App. Div. (N. Y.) 665, 668. *Coleman.* v. *Ruggles-Robinson Co.* 159 App. Div. (N. Y.) 268, 271; affirmed 213 N. Y. 683. *Crane Elevator Co.* v. *Lippert,* 63 Fed. Rep. (C. C. A.) 942. It has been held also that where germs enter the body at the point of injury causing infection such as blood poisoning, the wrongdoer may be held responsible for the resulting damage. *McGarrahan* v. *New York, New Haven & Hartford Railroad,* 171 Mass. 211. *Jones* v. *Richmond,* 118 Va. 612, 620–621. *Koehler* v. *Waukesha Milk Co.* 190 Wis. 52, 63. See 79 Am. L. R. 351 *et seq.* for collection of cases.

There are numerous cases where the attempt has failed to show by evidence a causal connection between an injury resulting from the original negligence of a defendant and a

disease developing a considerable time after that injury. *Daniels* v. *New York, New Haven & Hartford Railroad,* 183 Mass. 393. *Bates* v. *Carroll,* 99 Conn. 677. *Miller* v. *Director General of Railroads,* 270 Penn. St. 330, 332. *Seifter* v. *Brooklyn Heights Railroad,* 169 N. Y. 254. *Mayor & City Council of Nashville* v. *Reese,* 138 Tenn. 471, 486. See *Gray* v. *Chicago & Northwestern Railway,* 153 Wis. 637, 649. But those decisions do not show that there can be no recovery when the burden of proof resting on the plaintiff to show such causal connection has been sustained.

We are not required to pass upon the weight of the evidence. The case at bar is close, but in our opinion it cannot quite be said that there was no evidence to support the contention of the plaintiff. There was no error in the denial of the motion of the defendant for a directed verdict in his favor.

The conclusion is that the portion of the charge to which exception was taken was in conformity to the decisions of this court as to proximate cause and is supported by the weight of authority elsewhere.

The trial judge submitted to the jury this question: "Was the immediate cause of death an infection due to hemolytic streptococcus?" The answer returned by the jury was "Yes, due to reason of weakened condition caused by accident." The defendant excepted to this answer and to the denial of his motion to strike from it all following the word "Yes." The submission of questions to the jury for answer has been a custom in our courts for many years. *Burke* v. *Hodge,* 211 Mass. 156, 161–162, and cases cited. *Edwards* v. *Worcester,* 172 Mass. 104. *Hurnanen* v. *Nicksa,* 228 Mass. 346. *Charles* v. *Boston Elevated Railway,* 230 Mass. 536, 538, 541. *Dziegiel* v. *Westford,* 274 Mass. 291, 296. *Stone* v. *Orth Chevrolet Co. Inc.* 284 Mass. 525, 528, and cases cited. It now has the sanction of a statute. St. 1913, c. 716, § 2, now G. L. (Ter. Ed.) c. 231, § 124. There was no impropriety in the answer here returned. It was adapted to the course of the trial and was supported by evidence. It was directed to the portion of the charge already quoted, to which exception was taken. There was no error in the

refusal to strike words from the answer returned by the jury.

There was no error in the denial of the defendant's requests for instructions, but they need not be discussed.

In each case the entry may be

*Exceptions overruled.*