Mary **MERZIGIAN**, Administratrix of the Est. of Joseph Merzigian, Plaintiff,

v.

**SUNBURY TRANSPORT, LTD.,** Defendant.

No. 06–CV–30012–MAP.

United States District Court, D. Massachusetts.

Dec. 4, 2007.

of qualified immunity. *See Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 69 (1st Cir. 2002).

John D. Ross, III, Ross & Ross, P.C., Springfield, MA, for Plaintiff.

Bradley A. Singer, Looney & Grossman LLP, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### (Docket Nos. 28 & 36)

PONSOR, District Judge.

This is a tort action based on diversity of citizenship, arising from a motor vehicle accident that occurred on August 23, 2005. Defendant has filed a Motion for Summary Judgment, which was referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation.

On November 1, 2007, Judge Neiman issued his Report and Recommendation, to the effect that Defendant's motion should be allowed. The undisputed facts, viewed in the light most favorable to Plaintiff, are summarized in the Report and Recommendation at 2–4. Based upon the analysis of these facts and of the applicable regulations, the Report and Recommendation concludes, convincingly, that Defendant breached no duty to Plaintiff as a matter of law. Given this finding, the Magistrate Judge recommended that Defendant's Motion for Summary Judgment be allowed.

The Report and Recommendation reminded the parties that they had ten days from its receipt to file objections, *See* Report and Recommendation (Dkt. No. 36) at 12 n. 4. Despite this warning, no objection to the Report and Recommendation has been filed.

Having reviewed the substance of the Report and Recommendation and finding it meritorious, and noting that there is no objection, the court, upon *de novo* review, hereby ADOPTS the Report and Recommendation. Based upon this, the court hereby ALLOWS Defendant's Motion for Summary Judgment (Dkt. No. 28). The clerk is ordered to enter a judgment of dismissal for Defendant. This case may now be closed.

It is So Ordered.

### REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT *(Document No. 28)*

NEIMAN, Chief United States Magistrate Judge.

Mary Merzigian ("Plaintiff"), as administratrix of the estate of her late husband,

Joseph Merzigian ("Merzigian"), brings this action for wrongful death against Sunbury Transport, Ltd. ("Defendant"), the owner of the truck into which Merzigian's vehicle collided on August 23, 2005. In essence, Plaintiff's complaint alleges that Defendant breached a duty to turn on the truck's blinkers, *i.e.*, warning signal flashers (hereinafter, the "warning flashers"), while the truck was parked on the side of the road and that this breach was the proximate cause of Merzigian's death.

Defendant has filed a motion for summary judgment, which motion has been referred to this court by District Judge Michael A. Ponsor for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendant's motion be allowed.

## I. STANDARD OF REVIEW

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" issue is one that "the evidence relevant to the issue, viewed in the light most favorable to the party opposing the motion, [is] sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995). A fact is "material" if it "has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir.1996). Upon a finding that the moving party has satisfied its evidentiary burden, the burden shifts to the nonmoving party to show that there still exists a legitimate triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. BACKGROUND

The following factual background is derived from Defendant's Local Rule 56.1 Statement of Material Facts (Document No. 30, hereinafter "Def.'s Facts") and Plaintiff's Statement of Material Facts in Dispute (Document No. 35, hereinafter "Pl.'s Facts"). Other facts are addressed as necessary in the court's discussion below. Most of the facts are not in dispute. Where there is a particular dispute, the fact is stated in a light most favorable to Plaintiff, the party opposing summary judgment. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003).

The incident which gives rise to this suit occurred on Dwight Road in Longmeadow, Massachusetts. (Def.'s Facts ¶¶ 1, 3.) Dwight Road, which has two lanes divided by a double yellow line, is located within Longmeadow's business district. (*Id.* ¶¶ 6, 8.) The north-bound side of Dwight Road has a sandy off-road section adjacent to the road. (*Id.* ¶ 3.) The marked speed limit is thirty-five miles an hour. (*Id.* ¶ 7.)

On August 23, 2005, at approximately 9:42 a.m., Merzigian was driving his car northbound on Dwight Road. (*Id.* ¶¶ 1, 3.) A tractor-trailer, which was traveling immediately in front of Merzigian, had on its left turn signal to turn onto Converse Street. (*Id.* ¶ 26.) Merzigian, in an apparent attempt to pass the truck on the right, drove his vehicle off the road onto the sandy off-road section. (*Id.* ¶ 10.) After proceeding approximately 240 to 295 feet, Merzigian collided into the back of Defendant's tractor-trailer, which was parked on the sandy off-road section. (*Id.*) Merzigian died instantly. (*Id.* ¶ 13.)

According to Plaintiff, Merzigian could not see the sandy off-road section while he was still on the paved road because the

tractor-trailer in front of him was blocking his view. (Pl.'s Facts ¶ 9.) Plaintiff also asserts that Merzigian's speed cannot be determined because the combination of anti-locking brakes on his vehicle and the soft shoulder left no measurable skid marks. (*Id.* ¶ 32.) Plaintiff concedes, however, that Defendant's tractor-trailer was bright yellow with black lettering and that its driver had parked it on the off-road section earlier that day and was sleeping in the cab at the time of the collision. (Def.'s Facts ¶¶ 15, 16.) For its part, Defendant concedes that, before the driver went to sleep, he did not activate warning flashers or employ any other warning devices. (*Id.* ¶ 19.)

Plaintiff's complaint, which was filed initially in state court, seeks relief in negligence for one count of wrongful death. (Complaint ¶ 6.) In due course, Defendant removed the action to this forum based on diversity jurisdiction and, after discovery was completed, filed the instant motion.

### III. *DISCUSSION*

In order to maintain an action for negligence under Massachusetts law, a plaintiff must prove "(1) a legal duty owed by defendant to the plaintiff; (2) breach of that duty; (3) proof that the breach was the proximate cause of the plaintiff's injuries; and (4) actual damage or injury." *Davis v. Prot. One Alarm Monitoring, Inc.*, 456 F.Supp.2d 243, 249 (D.Mass.2006) (citations omitted). Defendant initially targets the first element, duty. Citing the same federal regulation upon which Plaintiff relies, Defendant argues that it owed no duty to Merzigian to activate its vehicle's warning flashers while the tractor-trailer was parked on the side of the road. Were the court to find that such a duty

was owed Merzigian, however, Defendant admits breach of the duty, at least for present purposes. *See St. Germaine v. Pendergast*, 411 Mass. 615, 584 N.E.2d 611, 614 (1992) (under Massachusetts law, non-compliance with a regulation provides evidence of negligence). Still, notwithstanding any such breach, Defendant argues that it is alternatively entitled to summary judgment via the third element of Plaintiff's proof, proximate cause.

The court believes that Defendant has the far better argument with respect to the question of duty and, therefore, that its motion for summary judgment should be allowed on that basis. However, should the trial court disagree with this recommendation, the court will further recommend that Defendant's motion be denied as to proximate cause insofar as genuine issues of material fact remain with regard to that issue.

### A. *Duty*

Defendant first argues that it did not have a duty under the relevant state statute invoked by Plaintiff, Mass Gen. L. ch. 85, § 15, to place warning flashers, flares, or reflective triangles on the roadway when it parked its vehicle along the side of Dwight Road.[1] Given the facts at bar, Plaintiff now concurs. Plaintiff argues, however, that a proper reading of the federal regulation, 49 C.F.R. § 392.22, upon which it also relies, required Defendant's driver to activate the truck's warning flashers when it was parked along the roadside. Defendant disagrees. For its part, the court finds Defendant's argument more persuasive.

---

1. Mass. Gen. Laws Ann. ch. 85, § 15 provides in pertinent part as follows: "Every vehicle, whether stationary or in motion, on any public way, shall have attached to it a light or lights which shall be so displayed as to be visible from the front and the rear during the period from one half an hour after sunset to one half an hour before sunrise."

The Federal Motor Carrier Safety Regulations require all vehicles to comply with federal regulations as well as the laws and regulations of the jurisdiction in which they are traveling. *See* 49 C.F.R. § 390.3(e). As indicated, neither party argues that Massachusetts law created a duty for Defendant's driver to have activated a warning device in the circumstances at hand. Accordingly, the court will look solely to the federal regulation at issue, 49 C.F.R. § 392.22 (hereinafter "the regulation") and then, additionally, to its regulatory history.

### 1. *The Regulation*

The regulation, in relevant part, has two parts. Paragraph (a) is entitled "Hazard warning signal flashers" and provides as follows:

(a) Hazard warning signal flashers. Whenever a commercial motor vehicle is stopped upon the traveled portion of a highway or the shoulder of a highway for any cause other than necessary traffic stops, the driver of the stopped commercial motor vehicle shall immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places the warning devices required by paragraph (b) of this section. The flashing signals shall be used during the time the warning devices are picked up for storage before movement of the commercial motor vehicle. The flashing lights may be used at other times while a commercial motor vehicle is stopped in addition to, but not in lieu of, the warning devices required by paragraph (b) of this section.

49 C.F.R. § 392.22(a). Paragraph (b), entitled "Placement of warning devices," provides as follows:

(b) Placement of warning devices—

(1) General rule. Except as provided in paragraph (b)(2) of this section, whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place the warning devices required by § 393.95 of this subchapter, in the following manner:

. . . .

(2) Special rules . . . iii) Business or residential districts. The placement of warning devices is not required within the business or residential district of a municipality, except during the time lighted lamps are required and when street or highway lighting is insufficient to make a commercial motor vehicle clearly discernable at a distance of 500 feet to persons on the highway.

49 C.F.R. § 392.22(b).

In Plaintiff's view, paragraph (a) mandated Defendant's use of warning flashers in the case at bar. The court disagrees. It is clear that paragraph (a) only requires a commercial motor vehicle driver to activate warning flashers on the vehicle *"until* the driver places the warning devices required by paragraph (b)." 49 C.F.R. § 392.22(a) (emphasis added). In turn, subsection (1) of paragraph (b) requires as a "general rule" that warning devices be placed on the roadway within ten minutes of the vehicle coming to a stop. *See* 49 C.F.R. 392.22(b)(1). However, subsection (2) creates an exception to this rule; it provides that commercial vehicles stopped in "business or residential districts" during daylight hours are "not required" to put out the warning devices otherwise required. *Id.* § 392.22(b)(2)(iii). Since it is undisputed that Defendant was stopped in a commercial district during daylight hours, its driver did not have to put out the warning devices required in paragraph (b)(1). That being so, Defendant's driver did not have to activate the vehicle's warn-

ing flashers otherwise required by paragraph (a).

In reaching this conclusion, the court agrees with Defendant's textual interpretation of the regulation. First, the plain language of paragraph (a) requires that warning flashers be activated "until" warning devices are required to be placed on the roadway. As Plaintiff concedes, however, Defendant's driver did not have to set out any warning devices pursuant to paragraph (b)(2); Defendant's vehicle fell within the exception to the requirement because it was parked in a business district during daylight hours. Accordingly, the obligation to activate the warning flashers was never triggered. As Defendant argues, reading the regulation any other way would require interpreting "until" to mean "unless."

Second, the regulation, at most, contemplates the use of warning flashers for no longer than ten minutes. As indicated, paragraph (a) requires that warning flashers be turned on "until" the warning devices mentioned in paragraph (b) are placed. In turn, subsection (1) of paragraph (b) mandates that warning devices, when required, be placed on the roadway within ten minutes of stopping. Nowhere does the regulation require that warning flashers be activated for any other purpose or time period. To be sure, paragraph (a) also states that warning flashers "*may* be used at other times while a commercial vehicle is stopped in addition to, *but not in lieu of*, the warning devices required by paragraph (b)." 49 C.F.R. § 392.22(a) (emphasis added). As is obvious, however, this is purely voluntarily on the part of the driver.

In summary, Plaintiff's argument—that paragraph (a) required Defendant's driver to active the warning flashers whenever he was stopped on the side or shoulder of a road and without any exemption or time limit—simply runs afoul of the plain meaning of the regulation when read as a whole. For the reasons stated, therefore, the court has little choice but to conclude, tragic as her husband's death must be, that the regulation does not create the duty upon which Plaintiff seeks to rest her case. The court, therefore, will recommend that Defendant's motion for summary judgment be allowed.

### 2. *Regulatory History*

Although the court grounds this recommendation on the plain meaning of the regulation, its history also requires that the regulation be interpreted as Defendant suggests. Of course, the court is mindful that regulatory history should be considered only if the text is ambiguous. *See General Motors Corp. v. Darling's*, 444 F.3d 98, 108 (1st Cir.2006). Accordingly, the court offers this analysis as a supplement to the textual analysis discussed above in the event that the trial court, contrary to the views of this court, deems the regulation ambiguous, *i.e.*, subject to "more than one reasonable interpretation." *Id.* (citation omitted).

The original regulation, 49 C.F.R. § 392.22 (1968), required the driver of a disabled truck on a highway to utilize emergency "flashers and devices" only "during the period that lighted lamps [were] required." *Id.* § 392.22(a).[2] At such times, the driver was to flash the front and rear warning signals on the vehicle until he set out certain warning devices. *See id.* More particularly, the driver was required to immediately set out a

---

**2.** Interestingly enough, this was somewhat similar to the state's statutory requirement set out at note 1.

lighted fusee, lantern, or reflector, and, as soon as possible thereafter but before the fusee died, set out yet other portable emergency devices. *See id.* §§ 392.22(b), (c).

In 1970, the regulation was amended in three ways significant here. First, the amended regulation required the driver of a disabled vehicle to turn on its flashers and place out warning devices during the day time, as well as night time, if the vehicle was on a highway. *See* 49 C.F.R. § 392.22 (1970). As the notice accompanying the amended regulation explained:

> [S]topped vehicles which must now display flashing signals during night hours, would be required to display them during daylight as well. The requirements of 392.22 as to the immediate placement of a warning device by the side or a stopped vehicle would be deleted. Flashing signals are considered an adequate immediate warning.

Notice of Proposed Rule Making, 49 C.F.R. 392, 393 (1970). Second, the regulation no longer required the driver to place a fusee, lantern, or reflector on the road. *Id.* Third, the regulation created an exception to the placement of warning devices during the daytime in business or residential districts. *Id.* § 392.22(b)(3).

As is evident, the 1970 amendments confirm that emergency flashers on vehicles, alone, were never intended to serve as a long-term warning, as Plaintiff would have the court believe. If anything, the language in the regulatory notice, *i.e.,* that the flashers were an "adequate immediate warning," confirms that flashers were to serve only as an immediate warning until more permanent warnings could be placed. To be sure, the regulation, as amended, generally required the use of flashers in the daytime before warning devices were placed on the highway, but, most importantly for present purposes, created an exception for business and residential districts. Thus, drivers were simply not required to use these devices in the daytime in those districts.

At bottom, the plain meaning of the governing regulation—enhanced, if necessary, by its regulatory history—requires a finding that it created no duty for Defendant's driver to turn on his warning flashers when parked on the side of the road in a business district during daylight hours. For these reasons, the court will recommend that Defendant's motion for summary judgment be allowed.[3]

### B. *Proximate Cause*

In the event that the trial court finds that a regulatory duty did exist, the court also addresses Defendant's motion insofar as it seeks summary judgment with respect to the issue of proximate cause. In short, the court will recommend that summary judgment *not* be granted on the issue of proximate cause because of the existence of genuine issues of material fact.

Proximate cause is defined as "that which in a continuous sequence, unbroken by any new cause, produces an event and without which the event would not have occurred." *Wallace v. Ludwig,* 292 Mass. 251, 198 N.E. 159, 161 (1935). Proximate

---

**3.** Perhaps recognizing the strength of Defendant's position, Plaintiff raised the possibility for the first time at oral argument that, even if no duty was created by the regulation, there might have been a "common-law" duty for Defendant's driver to turn on his warning flashers when parked on the side of the road. This argument, if argument it is, was not otherwise developed and will not be further considered by the court. *Cf. Zhang v. Immigration & Naturalization Serv.,* 348 F.3d 289, 293 (1st Cir.2003) (refusing to consider arguments raised but not briefed).

cause is normally a question of fact that is left for a jury. *Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331, 338 (1983). Here, however, Defendant asserts two reasons why proximate cause should be decided in its favor as a matter of law. First, Defendant contends that Merzigian himself was reckless and, alone, was the cause of injury. Second, Defendant argues that even the use of warning flashers would not have prevented the accident.

Defendant's arguments are factually strong and may ultimately carry the day at trial, should a trial be deemed necessary. Defendant, however, premises its arguments on facts that are in dispute. For example, Defendant contends that Merzigian was speeding and that his visibility was clear for hundreds of feet before leaving the paved road to go around the truck in front of him. Plaintiff's statement of facts, however, provides testimony that the combination of the soft off-road and Merzigian's anti-lock brakes make it impossible to determine with any certainty how fast Merzigian was driving. There is also testimony that Merzigian's vision was blocked by the truck in front of him. If found by a jury to be true, these facts could negate the arguments now proffered by Defendant. *See O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir.2001) ("Unless there are no material facts in dispute permitting resolution as a matter of law ... it is a jury issue."). Accordingly, the court recommends that, if necessary, Defendant's motion be denied on the issue of proximate cause.

## IV. CONCLUSION

For the reasons stated, the court recommends that Defendant's motion for summary judgment be ALLOWED. Should it be determined that proximate cause needs to be addressed, however, the court recommends that Defendant's motion for summary judgment be DENIED with respect to that issue.[4]

4. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.